UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE LEE POSLOF,<br><br>    Plaintiff,<br><br>    v.<br><br>CARLOS ARCE, et al.,<br><br>    Defendants. | Case No, 24-cv-05444-PCP<br>Case No. 24-cv-05446-PCP<br>Case No. 24-cv-05447-PCP<br><br>**ORDER TO SHOW CAUSE WHY THIS LAWSUIT SHOULD NOT BE DISMISSED** |

    Mr. Poslof, a California prisoner proceeding *pro se*, filed three lawsuits, The Court orders Mr. Poslof to **show cause by September 23, 2024**, why it should not abstain from, and dismiss, these actions.

    In Mr. Poslof's first lawsuit, he sought a temporary restraining order ("TRO Motion"), but did not file a complaint, *See Poslof v. Arce et al.*, Case No. 24-cv-05444-PCP (N.D. Cal. filed Aug. 15, 2024).[1] Nor did he pay the filing fee or file an application to proceed in forma pauperis ("IFP Motion"). The TRO motion is held in abeyance until Mr. Poslof files all missing documents <u>and</u> responds to this order to show cause.

    In Mr. Poslof's second and third lawsuits, he filed a petition for a writ of mandamus but still failed to pay the filing fee or file an IFP Motion, *See Poslof v. Arce,* Case No. 24-cv-05446-PCP (N.D. Cal. filed Aug. 12, 2024) ("5446 Action"); *Poslof v. Warden et al.*, Case No. 24-05447-PCP (N.D. Cal. filed Aug. 14, 2024) ("5447 Action").

    Mr. Poslof's second and third lawsuits do not cure the defects present in his first lawsuit,

---

[1] Although Mr. Poslof's filings were not received by the Court until August 20, they are deemed filed as of August 15, 2024, according to the prison mailbox rule. *See Houston v. Lack*, 487 U.S. 266 (1988) (announcing the prison mailbox rule)

In fact, for the reasons stated below, facts provided in the later actions suggest they, and the first lawsuit, must be dismissed on abstention grounds.

## I. BACKGROUND

At all relevant times, Mr. Poslof was incarcerated at Salinas Valley State Prison ("SVSP").

In the Affidavit filed in support of his TRO Motion, Mr. Poslof states that he has been held in administrative segregation for over one month, *See* Dkt. No. 1-1 at 1, *Poslof v. Arce et al.*, Case No. 24-cv-05444-PCP (N.D. Cal. filed Aug. 20, 2024), He was endorsed for a transfer to another prison, but subsequently was moved to SVSP's "D Block." Mr. Poslof "refused" his housing assignment "due to enem[y] concerns."[2] *Id*. Officers refused to investigate those concerns "so [Mr. Poslof] claimed suicidal tendencies" in response to officers' refusal. *Id*. Mr. Poslof was placed on suicide watch in a cell designated for that purpose. *See id*. A psychologist cleared him to return to a cell on "Delta 6," and Mr. Poslof then attempted to strangle himself. *See id*. He was moved back to a suicide watch cell. *See id*. He represents that the cell was "flooded and filthy" and contaminated with human waste; he was given only a "suicide snack" to eat and was forced to eat with his hands; and he was forced to wear a "suicide smock." *Id*. at 2.

On approximately August 12 or 13, Mr. Poslof was moved again to a cell on "Delta 3." *Id*. This appears to be a division of administrative segregation.[3] *See id*. He had been deprived of a shower and soap between his move on August 12 or 13 and the filing of his documents on August 15. *See id*. SVSP claims to have lost Mr. Poslof's property, so he must "wear[] someone else's dirty clothing." *Id*. He cannot call outside contacts from his prison-issued tablet. *See id*. at 3. He is given "very low portion[s]" of food, and not permitted to supplement those portions with purchases from the canteen. *Id*. at 3. Mr. Poslof contends these acts all are retaliatory. *See id*.

Mr. Poslof's two mandamus petitions concern the same issues discussed in his Affidavit. *See* Dkt. No. 1, 5446 Action; Dkt. No. 1, 5447 Action. The 5447 Action contains the additional detail that Mr. Poslof has "filed a writ for mandate with the Court of Appeals for the Fifth District

---

[2] From context, it appears that Mr. Poslof refused to be placed in D Block. The Affidavit is somewhat ambiguous, however, and he may have refused transfer to the other prison.
[3] Mr. Poslof states he has wrongly been accused of battering staff and is being held in administrative segregation for an act he did not commit.

2

in Fresno" regarding these issues, which had not been addressed by August 14, 2024. The 5446 Action named the Fifth District Court of Appeal as a real party in interest, for "fail[ing] to intervene" after Mr. Poslof filed a mandamus petition in that court. *See* Dkt. No. 1 at 1–2, 5446 Action.

In an abundance of caution, the Court searched the docket for the Fifth District Court of Appeal. Mr. Poslof appears to have filed 21 cases in that court. *See* "Poslof," Appellate Courts Case Information: Search, https://appellatecases.courtinfo.ca.gov/search.cfm?dist=5 (last visited August 26, 2024). Three were filed in the month before the instant actions were opened, and all three were denied for failure to exhaust. *See Poslof v. Allen*, Case No. F088390 (Cal. 5th Dist. Ct. App., filed July 26, 2024) (denied on Aug. 15, 2024, for failure to exhaust); *In re Poslof*, Case No. F088469 (Cal. 5th Dist. Ct. App., filed Aug. 9, 2024) (denied on Aug. 21, 2024, for failure to exhaust)); *In re Poslof*, Case No. F088485 (Cal. 5th Dist. Ct. App., filed Aug. 13, 2024) (same).

As of the date of publication, Mr. Poslof does not appear to have appealed these denials to the California Supreme Court. *See* "Poslof," Appellate Courts Case Information: Search, https://appellatecases.courtinfo.ca.gov/search.cfm?dist=0 (last visited August 26, 2024).

## II.   ANALYSIS

Several rules prohibit federal courts from interfering with or reviewing the decisions of state courts, unless very specific circumstances apply, One of more of those principles appear to apply here and to bar this Court from considering Mr. Poslof's actions.

### A.   *Younger v. Harris*

Under principles of comity and federalism, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances, *See Younger v. Harris*, 401 U.S. 37, 43–54 (1971); *Samuels v. Mackell*, 401 U.S. 66, 68–74 (1971).

In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that principles of comity and federalism prohibit a federal court from interfering with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances. *See id*. at 43–54. *Younger* applies throughout appellate proceedings, requiring that

3

state appellate review of a state court judgment be exhausted before federal court intervention is permitted. *See Dubinka v. Judges of the Super. Ct.*, 23 F.3d 218, 223 (9th Cir. 1994).

*Younger* abstention has been expanded to cover civil enforcement actions and is required when: (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue, *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). A fourth requirement has also been articulated by the Ninth Circuit: that "the federal court action would enjoin the state proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves*." SJSVCCPAC v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) (citing cases).

Here, Mr. Poslof's state actions were ongoing at the time the instant lawsuits filed. Although he has not yet appealed to the California Supreme Court, his time to do so has not yet expired. There thus appears to be a high risk that the instant lawsuits will be *Younger*-barred.

Even if Mr. Poslof does not appeal to the California Supreme Court, his lawsuits may be barred by the *Rooker-Feldman* doctrine, discussed in the next section.

**B.**     ***Rooker-Feldman***

Under *Rooker-Feldman*, lower federal courts are without subject matter jurisdiction to review state court decisions, and state court litigants may therefore only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the United States, *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The *Rooker-Feldman* doctrine applies even when the state court judgment is not made by the highest state court, *see Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986), when federal constitutional issues are at stake, *see Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995); *Mullins v. Oregon*, 57 F.3d 789, 792 (9th Cir. 1995), and when the federal review would be of state court review of determinations made by state administrative bodies, *see Feldman*, 460 U.S. at 468, 485–86, The *Rooker-Feldman* doctrine essentially bars federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139

(9th Cir. 2004); *see Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). This is because the *Rooker-Feldman* doctrine sets a limit to the district court's jurisdiction based on the Supreme Court's exclusive appellate jurisdiction over state court judgments under 28 U.S.C. § 1257. *See id.* at 291–92.

As discussed above, Mr. Poslof's three state actions were denied for failure to exhaust. "Exhaustion in [§ 1983] prisoner cases . . . is mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (discussing 42 U.S.C. § 1997e(a)); *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exhaustion exceptions). All available remedies must be exhausted, and exhaustion is a prerequisite to suit. *See Porter*, 534 U.S. at 524; *see also Booth v. Churner*, 532 U.S. 731, 741 (2001). District courts are without discretion to ignore a failure to exhaust. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

Because exhaustion is mandatory, and this Court cannot ignore a failure to exhaust, the Fifth District Court of Appeal's conclusion that Mr. Poslof did not exhaust his claims would have to be ruled upon by this Court. Indeed, when Mr. Poslof eventually files a complaint on the court-issued form, he will be asked to state under penalty of perjury whether he has exhausted his claims. Thus, even if Mr. Poslof evades the *Younger* bar by deciding not to appeal the state-court dismissals to the California Supreme Court, the instant federal lawsuits likely would be barred by the *Rooker-Feldman* doctrine.

### C.  *O'Shea v. Littleton*

To the extent Mr. Poslof desired this Court to order the Fifth District Court of Appeal to rule on his pending state-court lawsuits, this request is moot because the Fifth District Court of Appeal has issued rulings. However, even if such a request had not been mooted, it would have been barred under *O'Shea v. Littleton*, 414 U.S. 488 (1974).

*O'Shea* stands for the general proposition that federal courts "should be very reluctant to

grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992). Under the law of the circuit, *O'Shea* abstention "is appropriate where the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment." *Courthouse News Service v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014), *See, e.g., id.* at 789–792 (concluding that injunction requiring state superior court to provide same-day access to filed unlimited civil complaint poses little risk of an "ongoing federal audit" or a "major continuing intrusion of the equitable power of the federal courts into the daily conduct of state . . . proceedings") (quoting *O'Shea*, 414 U.S. at 500, 502).

If Mr. Poslof wanted this Court to order the Fifth District Court of Appeal to act, as is suggested by the petition in the 5446 Action, this Court could not have done so without "monitor[ing]" Mr. Poslof's "individual case[]." Such a request thus is barred by *O'Shea*.

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. **By September 23, 2024**, Mr. Poslof shall inform the Court why this matter should not be dismissed pursuant to the abstention doctrines discussed above. Mr. Poslof must explain why the Court should decline to abstain under **both** *Younger* **and** *Rooker-Feldman*.

2. In the alternative, if Mr. Poslof concludes his lawsuits are barred by any doctrine mentioned in this order, he may file a Notice of Voluntary Dismissal. If he does so, the Court will construe these actions as opened in error and will dismiss them without requiring Mr. Poslof to pay the filing fee or file an IFP Application. This will permit Mr. Poslof to avoid the over $1,000 in fees associated with having opened three actions, and to avoid accruing strikes under 28 U.S.C. § 1915(g).

**IT IS SO ORDERED.**

Dated: August 27, 2024

P. Casey Pitts
United States District Judge